IN THE MATTER OF AARON EVANS HAMILTON

No. COA11-1463

(Filed 1 May 2012)

**1. Sexual Offenders—sex offender registration—petition for termination—not moot—no automatic termination**

The trial court did not err in failing to dismiss petitioner's petition for termination of his sex offender registration for mootness and in automatically declaring that petitioner's registration requirement had ended. Petitioner failed to show mootness. Further, N.C.G.S. § 14-208.7 was amended to provide that registration of convicted sex offenders could continue beyond ten years, even when the registrant had not reoffended, and Section 14-208.12A provides that persons wishing to terminate their registration requirement must petition the superior court.

IN RE HAMILTON

[220 N.C. App. 350 (2012)]

**2. Sexual Offenders—sex offender registration—petition for termination—Jacob Wetterling Act—Adam Walsh Act—petitioner complied with requirements**

The trial court erred as a matter of law in finding that petitioner's removal from the registry would not comply with the provisions of the federal Jacob Wetterling Act. The Jacob Wetterling Act had been repealed and replaced by the Adam Walsh Act (42 U.S.C. § 16915) and the uncontroverted evidence before the trial court was that petitioner had fully complied with all requirements of 42 U.S.C. § 16915 regarding termination of the registration period. Furthermore, the trial court failed to find the facts on all issues joined in the pleadings and the matter was remanded.

Appeal by Petitioner from order dated 29 August 2011 by Judge Gary M. Gavenus in Transylvania County Superior Court. Heard in the Court of Appeals 3 April 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Catherine F. Jordan, for the State.*

*Charles W. McKeller for Petitioner.*

STEPHENS, Judge.

*Procedural History and Factual Background*

On 20 August 2001, Petitioner Aaron Evans Hamilton pled guilty to a charge of taking indecent liberties with a child. Petitioner was sentenced to a prison term of 19 to 23 months, suspended for three years with a term of intensive supervised probation and 30 days in jail. Registration ("the registration requirement") with the North Carolina Sex Offender Registry ("the registry") was one of the terms of Petitioner's probation. Petitioner initially registered on 27 August 2001. After successfully completing his probationary sentence on 19 August 2004, Petitioner was discharged.

Petitioner continued to register with the registry annually as required by law. He was never convicted of another sexual offense or of any other criminal offense. On 17 May 2011, Petitioner filed a petition for termination of sex offender registration pursuant to N.C. Gen. Stat. § 14-208.12A.

Following a hearing on 29 August 2011, the trial court made only a single finding of fact:

**IN RE HAMILTON**

[220 N.C. App. 350 (2012)]

> The relief requested by [P]etitioner does not comply with the provisions of the federal Jacob Wetterling Act, 42 U.S.C. § 14071, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State.

This finding is one of eight pre-printed options for findings of fact following a hearing on a petition for termination of the registration requirement. Here, the trial court simply struck through the word "complies" and wrote in "does not comply" in its place. The court then concluded that Petitioner was not entitled to relief and denied his petition for termination of the registration requirement. The court announced its finding of fact, conclusion of law, and ruling in open court, and entered an order on the same date. From this order, Petitioner appeals.

### Discussion

Petitioner makes two arguments: that the trial court erred in failing to dismiss the petition for mootness and in finding that the relief requested does not comply with the provisions of the Jacob Wetterling Act. As discussed below, we vacate and remand.

### Standard of Review

> Resolution of issues involving statutory construction is ultimately a question of law for the courts. Where an appeal presents a question of statutory interpretation, full review is appropriate, and we review a trial court's conclusions of law *de novo.* . . .

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. Moreover, when confronted with a clear and unambiguous statute, courts are without power to interpolate, or superimpose, provisions and limitations not contained therein.

> The best indicia of the legislature's intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish. Moreover, in discerning the intent of the General Assembly, statutes *in pari materia* should be con-

strued together and harmonized whenever possible. *In pari materia* is defined as upon the same matter or subject.

*In re Borden,* \_\_\_ N.C. App. \_\_\_, \_\_\_, 718 S.E.2d 683, 685 (2011) (citations and quotation marks omitted).

"When the trial court sits as fact-finder without a jury: it must (1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law arising from the facts found; and (3) enter judgment accordingly." *Gainey v. Gainey,* 194 N.C. App. 186, 188, 669 S.E.2d 22, 23 (2008). In turn,

> [t]he standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary.

*Sessler v. Marsh,* 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001) (citations omitted), *disc. review denied,* 354 N.C. 365, 556 S.E.2d 577 (2001).

### Mootness

**[1]** Defendant first argues that the trial court erred in failing to dismiss the petition for mootness. Specifically, Petitioner asserts that, "[d]ue to the lack of need for a petition for removal from the registry, the trial court should have dismissed the petition for mootness and declared that Mr. Hamilton's registration requirement had ended."We disagree.

The doctrine of mootness is well-established in our State:

> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

> Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action.

*In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978) (citations omitted).

Here, Petitioner filed a petition seeking removal from the registry on 17 May 2011, thus creating the question in controversy. On that date, Petitioner apparently believed that there was a real question in controversy for the trial court to decide, as did the State, which appeared at the hearing in the matter. No party argued mootness before the trial court. From the date the petition was filed until the present, we see no change in facts, law, or other circumstances, and Petitioner has not argued that any such changes have occurred. In sum, Petitioner has failed to show mootness, and a careful reading of his brief reveals that Petitioner is actually asserting a different argument, to wit, that his registration requirement should have automatically terminated ten years after the date of his initial registration because sections 14-208.7 (as amended) and 14-208.12A do not apply to him. After careful consideration, we reject this argument as well.

Our State first established the North Carolina Sex Offender Registry in 1995, and the registration scheme has been amended numerous times in the intervening years. At the time of Petitioner's conviction in 2001, N.C. Gen. Stat. § 14-208.7 provided, *inter alia*, that Petitioner was subject to the registration requirement for a period of ten years after which the registration requirement would automatically terminate, so long as Petitioner had not reoffended.

In 2006, two changes were made to the registration scheme relevant to Petitioner's appeal. First, section 14-208.7 was amended to provide that registration of convicted sex offenders could continue beyond ten years, even when the registrant had not reoffended. N.C. Gen. Stat. § 14-208.7(5a) (2007) (providing that the registration requirement "shall be maintained for a period of at least ten years following the date of initial county registration"). This change became effective 1 December 2006, but the implementing language did not specify whether it applied retroactively to those persons already on the sex offender registry as of the effective date.

Second, the automatic termination of the registration requirement language was deleted from section 14-208.7, and section 14-208.12A was added to the registration scheme. Section 14-208.12A provides that persons wishing to terminate their registration requirement must petition the superior court for relief.

(a) Ten years from the date of initial county registration, a person required to register under this Part may petition the superior court to terminate the 30-year registration requirement[1] if the person has not been convicted of a subsequent offense requiring registration under this Article.

. . .

(a1) The court may grant the relief if:

(1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,

(2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State, and

(3) The court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.

N.C. Gen. Stat. § 14-208.12A (2012).[2] The implementing language of this statute states that it became effective 1 December 2006, and further specifies that it "is applicable to persons for whom the period of registration would terminate on or after [the effective] date." Petitioner's period of registration was not scheduled to terminate until 2011, and thus, section 14-208.12A plainly and explicitly applies to Petitioner. Further, while Petitioner contends the 2006 amendment to section 14-208.7, deleting the automatic termination language and adding language that the registration requirement last for "at least ten years" is ambiguous, we are not persuaded. The General Assembly did not explicitly state that this amendment was to apply retroactively to persons already on the registry. However, reading section 14-208.7 *in pari materia* with section 14-208.12A, we must construe the abolition of the automatic termination provision as applying to

---

1. A 2008 amendment to N.C. Gen. Stat. § 14-208.7 increased the duration of the initial registration requirement from ten to thirty years. 2008 N.C. Sess. Law 117, Sec. 8. The General Assembly expressly provided that the 30-year registration requirement applied only to offenders first registering on or after the amendment's effective date, 1 December 2008. Thus, this amendment did not alter or affect Petitioner's registration requirement.

2. None of the minor amendments occurring since this statute's 2006 enactment are significant or pertinent to Petitioner's appeal.

persons for whom the period of registration would terminate on or after 1 December 2006. To do otherwise would render the implementing language of section 14-208.12A superfluous and frustrate the General Assembly's intent in enacting and amending the registration scheme. Accordingly, this argument is overruled.

### The Trial Court's Finding of Fact

[2] Petitioner also argues that the trial court erred as a matter of law in finding that his removal from the registry would not comply with the provisions of the federal Jacob Wetterling Act. Specifically, Petitioner contends this finding of fact was erroneous because (1) the Jacob Wetterling Act was repealed and replaced by the Adam Walsh Act and (2) removing Petitioner's registration requirement *would* comply with the relevant provisions of the Adam Walsh Act. We agree.

As discussed above, a trial court may remove a petitioner from the registry if, *inter alia*, the removal "complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State[.]" N.C. Gen. Stat. § 14-208.12A(a1)(2). The Jacob Wetterling Act, 42 U.S.C. § 14071, was repealed upon the adoption of 42 U.S.C. § 16901 *et seq.*, the Adam Walsh Child Protection and Safety Act of 2006 ("the Adam Walsh Act"). The Adam Walsh Act now provides the "federal standards applicable to the termination of a registration requirement" and covers substantially the same subject matter as the Jacob Wetterling Act.

The Adam Walsh Act sets the duration of the registration requirement for sex offenders based upon what "tier" to which an offender belongs. *See* 42 U.S.C. § 16915 (2011) (titled "Duration of registration requirement"). The Act defines three tiers of sex offenders, based upon the facts of the offense committed:

(2) Tier I sex offender. The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.

(3) Tier II sex offender. The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

**IN RE HAMILTON**

[220 N.C. App. 350 (2012)]

(i) sex trafficking (as described in section 1591 of Title 18);

(ii) coercion and enticement (as described in section 2422(b) of Title 18);

(iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of Title 18);

(iv) abusive sexual contact (as described in section 2244 of Title 18);

(B) involves—

(i) use of a minor in a sexual performance;

(ii) solicitation of a minor to practice prostitution; or

(iii) production or distribution of child pornography; or

(C) occurs after the offender becomes a tier I sex offender.

(4) Tier III sex offender. The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:

(i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or

(ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a tier II sex offender.

42 USCS § 16911 (2011). In turn, the Adam Walsh Act further provides:

(a) Full registration period. A sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed) unless

the offender is allowed a reduction under subsection (b) of this section. The full registration period is—

(1) 15 years, if the offender is a tier I sex offender;

. . .

(b) Reduced period for clean record.

(1) Clean record. The full registration period shall be reduced as described in paragraph (3) for a sex offender who maintains a clean record for the period described in paragraph (2) by—

(A) not being convicted of any offense for which imprisonment for more than 1 year may be imposed;

(B) not being convicted of any sex offense;

(C) successfully completing any periods of supervised release, probation, and parole; and

(D) successfully completing of an appropriate sex offender treatment program certified by a jurisdiction or by the Attorney General.

(2) Period. In the case of—

(A) a tier I sex offender, the period during which the clean record shall be maintained is 10 years; and

. . .

(3) Reduction. In the case of—

(A) a tier I sex offender, the reduction is 5 years[.]

42 USCS § 16915 (2011).

Here, Petitioner contends that he was a tier I sex offender pursuant to section 16911, a matter not disputed by the State at the hearing or on appeal, and we agree. Thus, under the terms of section 16915, Petitioner's full registration period would be 15 years (subsection (a)), which could be reduced by five years (subsection (b)(3)(A)) if, after a period of ten years (subsection (b)(2)(A)), Petitioner had not committed another sex offense or other serious offense and had successfully completed any "periods of supervised release, probation, and parole" and "an appropriate sex offender treatment program" (subsection (b)(1)).

The record reveals that one of the special conditions set by the trial court following Petitioner's 2001 guilty plea was that he participate in a sexual abuse treatment program. By a Final Discharge dated 19 August 2004, Petitioner's probation/parole officer stated that Petitioner had "satisfactorily completed" his probation period as ordered. Further, at the 29 August 2011 hearing, Petitioner's counsel stated that Petitioner had not committed any new offenses, a matter again not disputed by the State. In sum, the uncontroverted evidence before the trial court was that Petitioner had fully complied with all requirements of 42 USCS § 16915 regarding termination of the registration period. Thus, the trial court's sole finding of fact is not supported by competent evidence and must be vacated. *See Sessler*, 144 N.C. App. at 628, 551 S.E.2d at 163.

Further, our review of the record suggests that the uncontroverted evidence at the hearing supported findings of fact 1-5 and 7 as preprinted on the "Petition and Order for Termination of Sex Offender Registration[.]" Petitioner asserted the matters contained in findings of fact 1-7 in his petition, and thus the trial court erred in failing to "find the facts on all issues joined in the pleadings[.]" *Gainey*, 194 N.C. App. at 188, 669 S.E.2d at 23. Accordingly, we remand for the trial court to review the competent evidence before it and make the appropriate findings of fact as dictated thereby.

However, as noted by the State, the ultimate decision of whether to terminate a sex offender's registration requirement still lies in the trial court's discretion. *See* N.C. Gen. Stat. § 14-208.12A(a1) (providing that a trial court "may" grant a petitioner relief if terms of the statute are met). Thus, after making findings of fact supported by competent evidence on each issue raised in the petition, the trial court is then free to employ its discretion in reaching its conclusion of law whether Petitioner is entitled to the relief he requests. "A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (citations and quotation marks omitted), *cert. denied*, 552 U.S. 1319, 170 L. Ed. 2d 760 (2008).

VACATED AND REMANDED.

Judges MCGEE and HUNTER, JR., ROBERT N., concur.