ELMORE, Judge.
 

 *381
 
 On 7 January 2013, Dexter Leon Surratt, Jr. (defendant) was indicted in 13 CRS 01017 for failing to change his address as a sex offender pursuant to N.C Gen.Stat. § 14-208.11. On 20 May 2013, defendant was indicted in 13 CRS 51481 for falsification of information under N.C. Gen.Stat. § 14-208.11. Following a jury trial, defendant was found guilty of both charges on 29 April 2014. The trial court consolidated the offenses for sentencing and imposed an active sentence with a minimum term of eighteen months and a maximum term of thirty-one months imprisonment. On appeal, defendant argues that the trial court erred in failing to grant his motions to dismiss on the basis that the State failed to prove that (1) he was required to register as a sex offender, and (2) that he falsified information for purposes of being charged with violating N.C. Gen.Stat. § 14-208.11. After careful consideration, we hold that the trial court did not err in failing to grant defendant's motion to dismiss based on his contention that he was not required to register as a sex offender. However, we agree with defendant that the trial court erred in denying his motion to dismiss the charge of falsifying information. Accordingly, we vacate defendant's convictions, in part, and remand for a new sentencing hearing.
 

 *382
 

 I.
 
 Background
 

 On 14 June 1994, defendant was convicted of the sexual offense of taking indecent liberties with a child. Defendant was sentenced to a three-year active sentence under the Fair Sentencing Act. After his release, defendant was required to register his address in the sheriff's office in the county in which he lived in order to be included in the sex offender registry. According to the sex offender registration records, defendant first registered as a sex offender on 24 January 1999.
 

 On 7 September 2012, defendant registered a change in his address from 238 32nd Street Southwest to 1470 14th Avenue Northeast in Hickory (the address)-his father's residence. The SBI sent a certified verification letter to the address and requested that the postal service return it to the Catawba County Sheriff's Office if it could not be delivered. The letter was returned "undeliverable." Law enforcement made several unsuccessful attempts to contact defendant at the address. Specifically, on 17 November 2012, Officer James Mathis of the Hickory Police Department went to the address and spoke with defendant's sister, Tiara Rippy. Ms. Rippy informed Officer Mathis that defendant and his father had had an argument a month prior and that defendant's father banished defendant from the residence. Ms. Rippy testified that she visited the residence two or three times per week and on weekends and defendant was never present in the residence after the argument with his father.
 

 Lieutenant Lynn Baker testified that he encountered defendant at the Sheriff's Office in February 2013. At that time, defendant maintained that he was residing at 1470 14th Avenue Northeast and claimed that he was mistakenly charged with failing to register a change in his address. Lieutenant Baker stated that defendant did not execute an address verification form, or any other forms, during the encounter.
 

 Between 11 March and 15 March 2013, Deputy Tom Scarborough attempted to make contact with defendant at 147 14th Avenue Northeast. Upon visiting the address, Deputy Scarborough encountered defendant's father, Mr. Stanley Johnson. Deputy Scarborough provided Mr. Johnson with an address verification form. Mr. Johnson signed the form, marking that defendant did not reside at the residence. Mr. Johnson testified that he lived alone, but he admitted that defendant stayed with him for several weeks. Mr. Johnson recalled arguing with defendant and asking defendant to vacate the residence.
 

 Defendant testified on his own behalf at trial. Defendant alleged that he moved into his father's residence in September 2012, at which
 
 *383
 
 time he registered 1470 14th Avenue Northeast as his address with the Sheriff's Office. Defendant stated that he continued
 
 *330
 
 to reside at that address with his father until March 2013. Defendant acknowledged that he and his father had argued, but he denied leaving the residence and residing elsewhere.
 

 II.
 
 Analysis
 

 A.
 
 Sex Offender Registration Requirements
 

 Defendant argues that the trial court erred in failing to grant his motion to dismiss because the State presented insufficient evidence that defendant was required to register as a sex offender. We disagree.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993).
 

 In 1995, North Carolina enacted the Amy Jackson Law, N.C. Gen.Stat. § 14-208.5 (2003)
 
 et seq.
 
 ('Article 27A'), requiring individuals convicted of certain sex-related offenses to register their addresses and other information with law enforcement agencies. The stated purpose of the law [was] to curtail recidivism because sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and ... protection of the public from sex offenders is of paramount governmental interest.
 

 State v. White,
 

 162 N.C.App. 183
 
 , 185,
 
 590 S.E.2d 448
 
 , 450 (2004) (quoting N.C. Gen.Stat. § 14-208.5 ).
 

 Article 27A applied to all offenders convicted of a sex offense on or after 1 January 1996 and to all offenders who were presently serving an active sentence.
 

 Id.
 
 see also
 
 1995 N.C. Sess. Laws ch. 545, § 3. North Carolina codified the requirements for registration under N.C. Gen.Stat. § 14-208.7 (1996), which provided that a current resident of North Carolina must register within 10 days of release from a penal institution and maintain that registration for 10 years following his or her
 
 release
 
 from a penal institution.
 

 Id.
 

 (emphasis added). If no active term of imprisonment was imposed, registration was to be maintained for a period of 10 years following each conviction for a reportable offense.
 

 Id.
 

 *384
 
 The registration law was revised in 2006 to require that registration on the sex offender registry be maintained for a period of 10 years following the
 
 date of the initial county registration.
 
 N.C. Gen.Stat. § 14-208.7(a) (2006). This statute became effective on 1 December 2006. In
 
 In re Hamilton,
 
 this Court clarified that the 2006 amendment " plainly and explicitly" applied retroactively to those offenders presently serving time for a sexual offense.
 
 220 N.C.App. 350
 
 , 355,
 
 725 S.E.2d 393
 
 , 397 (2012) This Court held:
 

 The General Assembly did not explicitly state that this amendment was to apply retroactively to persons already on the registry. However, reading section 14-208.7
 
 in pari materia
 
 with section 14-208.12A, we must construe the abolition of the automatic termination provision as applying to persons for whom the period of registration would terminate on or after 1 December 2006.
 

 Id.
 
 at 355-56,
 
 725 S.E.2d at 397
 
 .
 

 In 2008, the registration law was amended once more. The revision increased the registration period from ten to thirty years following the date of initial county registration, unless the defendant, after ten years of registration, successfully petitioned the court to shorten his or her registration period.
 
 N.C. Gen. Stat. § 14-208.7
 
 (2008) as amended by 2008 N.C. Sess. Laws ch. 117 § 8.
 

 Here, defendant was convicted of failing to change his address as a sex offender under
 
 N.C. Gen. Stat. § 14-208.11
 
 . This charge stemmed from defendant's 14 June 1994 conviction of taking indecent liberties with a child-a reportable offense. On appeal, defendant notes that the Amy Jackson Law was not in effect when defendant was convicted of the indecent liberties charge, and he argues that the State presented insufficient evidence at trial that he was required to register a change in his address on the basis that the sex offender registration program
 
 *331
 
 did not apply to him. More specifically, defendant contends that the State failed to prove that defendant was released from prison for a reportable offense on or after 1 January 1996.
 

 Defendant is correct in that the record on appeal is devoid of defendant's release date for the June 1994 indecent liberties conviction. Defendant was sentenced to three years imprisonment for the offense, but the record contains only the date on which defendant first registered as a sex offender, which was 24 January 1999. However, the fact that the release date is not part of the record does not automatically warrant
 
 *385
 
 the conclusion that defendant was not required to register when he was indicted in January 2013 for failing to change his address under N.C. Gen.Stat. § 14A-208.11.
 

 Pursuant to the North Carolina Rules of Evidence, Rule 201, this Court elects to take judicial notice of defendant's release date for the indecent liberties conviction, which was 24 September 1995. We also take judicial notice of the fact that defendant was not actually released from incarceration on 24 September 1995. This date was merely defendant's "on paper" release date or "paper parole" date. Defendant remained incarcerated after being "released" from the indecent liberties conviction in order to serve a consecutive sentence resulting from a conviction for committing a crime against nature. Defendant was not physically released from prison and placed on parole until 24 January 1999. Again, the record shows that it was on this date that defendant first registered as a sex offender.
 

 Upon review, this Court holds that it is defendant's actual release date of 24 January 1999 that controls the sentencing outcome of the instant case, not the "on paper" release date of 24 September 1995. In making such a determination, we look to N.C. Gen.Stat. § 15A-1354(b) (2013), which provides: "In determining the effect of consecutive sentences ... the Division of Adult Correction of the Department of Public Safety must treat the defendant as though he has been committed for a single term[.]";
 
 see also
 

 Robbins v. Freeman,
 

 127 N.C.App. 162
 
 , 164-65,
 
 487 S.E.2d 771
 
 , 773,
 
 review allowed, writ allowed,
 

 347 N.C. 270
 
 ,
 
 493 S.E.2d 746
 
 (1997)
 
 and aff'd,
 

 347 N.C. 664
 
 ,
 
 496 S.E.2d 375
 
 (1998) (concluding that under N.C. Gen.Stat. § 15A-1354, an inmate serving consecutive sentences shall have the date of his parole eligibility calculated as if the inmate were serving a single term). Accordingly, when a defendant is sentenced to consecutive prison terms, the sentences are to be calculated as a single term and the effective release date for purposes of parole eligibility and the like is the date on which a defendant is physically released from incarceration.
 

 In this case, the Amy Jackson Law was applicable to defendant because it took effect in January 1996 and applied to offenders who were then serving time for a reportable sexual offense. Defendant remained incarcerated until January 1999. Importantly, defendant was required to register as a sex offender when the 2008 amendment was passed. Again, the 2008 amendment increased the registration period from ten to thirty years following the date of initial county registration, unless after ten years of registration, the offender successfully petitioned the court to shorten the registration period. Just as this Court held that the 2006 amendment
 
 *386
 
 applied retroactively to those offenders who were required to register when the amendment took effect, this Court is of the opinion that the 2008 amendment likewise applies retroactively.
 
 See
 

 Hamilton, supra.
 
 Accordingly, defendant was required to maintain his registration for a period of thirty years from the date of his initial county registration in 1999.
 

 We recognize that the 2008 amendment affords a sex offender the opportunity to petition the trial court to shorten his or her registration period after meeting the ten-year registration requirement. As such, defendant could have been granted an early release from the sex offender registry had he taken advantage of his right to petition for a lesser registration period. He elected not to do so. Further, this Court has recently held that when a person claims that he or she was never required to register in the first place, as defendant argues here, a declaratory judgment action is a more appropriate way of
 
 *332
 
 obtaining a ruling upon the registration requirement.
 
 In re Bunch,
 
 --- N.C.App. ----, ----,
 
 742 S.E.2d 596
 
 , 599,
 
 review denied,
 

 367 N.C. 224
 
 ,
 
 747 S.E.2d 541
 
 (2013). In lieu of bringing a declaratory judgment action, it is unlikely that an offender can successfully petition this Court to find that he or she was never required to register provided the State objects to such argument.
 
 See
 
 id.
 

 (cautioning those who "seek to terminate registration as a sex offender under N.C. Gen.Stat. § 14-208.12A, for any reason other than fulfillment of the ten years of registration and other requirements of N.C. Gen.Stat. § 14-208.12A in the future will probably not succeed if the State does raise any objection or argument in opposition to the request").
 

 Given this, defendant should have considered filing a declaratory judgment action to raise the issue that is now before us on appeal. As it stands, we hold that the trial court did not err in denying defendant's motion to dismiss. Defendant was required to register a change in his address at the time he was indicted for the crime charged. We overrule defendant's argument.
 

 B.
 
 Falsification of Information
 

 Defendant argues that the trial court erred by denying his motion to dismiss the charge of submitting information under false pretenses to the sex offender registry where there was no evidence presented by the State that he willfully gave an address he knew to be false when he registered his address in Catawba County. We agree.
 

 Defendant was charged with submitting information under false pretenses in violation of N.C. Gen.Stat. § 14-208.11(a)(4), which is a
 
 *387
 
 crime that is subject to the North Carolina's Sex Offender Registration Act. According to N.C. Gen.Stat. § 14-208.9A(a)(1), each year on the anniversary of the person's initial registration date, and again six months later, the Division of Criminal Information is required to send a nonforwardable verification form to the registrant at the last reported address to verify his or her address. N.C. Gen.Stat. § 14-208.9A(a)(1) (2013). The form must be signed and must indicate "[w]hether the person still resides at the address last reported to the sheriff. If the person has a different address, then the person shall indicate that fact and the new address." N.C. Gen.Stat. § 14-208.9A. The statute defendant was charged with violating, N.C. Gen.Stat. § 14-208.11, also provides, in part, that:
 

 A person required by this Article to register who willfully does any of the following is guilty of a Class F felony:
 

 ...
 

 (4) Forges or submits under false pretenses the information or verification notices required under this Article.
 

 N.C. Gen.Stat. § 14-208.11(a)(4) (2013).
 

 The issue before this Court is whether defendant's oral verification to law enforcement that he continued to reside at his registered address warranted a charge of forging or falsifying information. On appeal, defendant admits that he told Lieutenant Baker in their February 2013 encounter at the Sheriff's Office that he continued to reside at 1470 14th Avenue Northeast. However, as defendant never executed a verification during the meeting or at any other time, he contends that it was error for the State to charge him with falsifying information under N.C. Gen.Stat. § 14-208.9A(a)(4). More specifically, defendant argues, "[t]he information [defendant] verbally provided to Lt. Baker was not required. It was not a verification form nor was it information for a verification form. Therefore it could not have qualified as a verification notice 'required' under Article 27A."
 

 Alternatively, the State's position is that defendant is guilty of the charged crime because he willfully made a false statement to Lieutenant Baker at the Sheriff's Office in February 2013-stating that he continued to reside at 1470 14th Avenue Northeast. On appeal, the State argues:
 

 Defendant did not live at 1470 14th Avenue Northeast at the time that he verified his address to Lt. Baker. The false information he provided led Deputy Scarborough to attempt to contact Defendant at the address multiple
 
 *388
 
 times, eventually resulting in a verification form signed by Mr. Johnson saying that defendant did not live at that address. Therefore, ... [d]efendant
 
 *333
 
 provided false information for a verification notice.
 

 The evidence in the instant case shows that defendant met with Lieutenant Baker of the Catawba County Sheriff's Department in February 2013, several months after being charged with failing to register a change of address. According to Lieutenant Baker, defendant verbally informed Lieutenant Baker that defendant was living at the address he had registered in September 2012. However, defendant neither filled out an address verification form during the encounter nor did he otherwise indicate in writing that he continued to reside at his registered address.
 

 On 15 March 2013, in an attempt to verify defendant's address, Deputy Scarborough went to the address in search of defendant. Mr. Johnson, defendant's father, was at the residence and informed Deputy Scarborough that defendant did not reside there. Mr. Johnson executed an address verification form indicating such. At no time during February or March 2013 did defendant himself execute the address verification form.
 

 In
 
 State v. Pressley,
 
 this Court held that "[t]he only rational reading of N.C. Gen.Stat. § 14-208.11 is that it criminalizes the provision of false or misleading information on
 
 forms
 
 submitted pursuant to the Act-regardless of when these forms are submitted." - -- N.C.App. ----, ----,
 
 762 S.E.2d 374
 
 , 377 (2014),
 
 review denied,
 
 - -- N.C.App. ----, ----,
 
 763 S.E.2d 382
 
 (2014) (emphasis added). In the instant case, the State was unable to present any evidence that defendant provided false or misleading information on a verification form. In fact, Lieutenant Baker admitted at trial that he never requested that defendant execute the verification form. Thus, there is no indication that defendant ever executed a verification form-and, more importantly, no evidence that defendant forged or submitted under false pretenses the verification notice required by N.C. Gen.Stat. § 14-208.9A.
 

 Should we rule in favor of the State, this Court would be extending the scope of N.C. Gen.Stat. § 14-208.9A beyond its intended purpose such that a defendant could be charged with falsifying or forging information merely by telling a lie to an officer about his current address. Again, the intent of the statute is to insure that officers possess complete and accurate information as to the addresses of registered sex offenders. We cannot extend the purpose of the statute to punish offenders for untruths they may tell law enforcement. An executed verification form is required before one can be charged with falsifying or forging the document. Accordingly, we hold that the trial court erred in denying
 
 *389
 
 defendant's motion to dismiss this charge based on the State's failure to prove that defendant submitted under false pretenses the verification notice required under Article 27A.
 

 No error, in part; vacated and remanded, in part; new sentencing hearing.
 

 Judges GEER and DILLON concur.