IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1158

Filed 17 December 2024

McDowell County, No. 03 CRS 302-03

STATE OF NORTH CAROLINA

v.

WILLIAM DAVID LINGERFELT, Defendant.

Appeal by defendant from order entered 22 May 2023 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 8 October 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Reginaldo E. Williams, Jr., for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Nicholas C. Woomer-Deters, for defendant-appellant.*

THOMPSON, Judge.

When determining whether a defendant may be afforded relief pursuant to a petition for termination of sex offender registration, a trial court must first determine, by comparison between the defendant's state offense and federal law, where the severity of Defendant's conduct falls within a three-tier system. Defendants whose offenses under state law do not meet any of the enumerated bases for categorization under Tier II or Tier III of this federal system automatically default to Tier I. After careful review, we affirm the order of the trial court denying defendant's petition for termination of sex offender registration.

## I.     Factual Background and Procedural History

On 4 February 2003, defendant was convicted of two counts of sexual activity by a substitute parent under the then-applicable provisions of N.C. Gen. Stat. § 14-27.7. Pursuant to these convictions, defendant was placed on probation and first registered as a sex offender on 14 February 2004; however, after a violation of conditions of his probation, defendant had his probation revoked and his sentence activated on 19 May 2004.

On 26 June 2019, defendant filed a petition for termination of his sex offender registration, and the petition was denied. Defendant filed another petition for termination of his sex offender registration on 1 March 2023—the petition at issue in this case—and the trial court again denied the petition. In denying the 2023 petition, the trial court made the following findings of fact from a form checklist on the order:

> 1. The petitioner was required to register as a sex offender under Part 2 of Article 27A of Chapter 14 of the General Statutes for the offense(s) set out above. [Defendant's February 2003 convictions were identified above on the form.]
>
> 2. The petitioner has been subject to the North Carolina registration requirements of Part 2 of Article 27A for at least ten (10) years beginning with the Date Of Initial NC Registration above. [14 February 2003 was the registration date identified.]
>
> 3. Since the Date Of Conviction above, the petitioner has not been convicted of any subsequent offense requiring registration under Article 27A of Chapter 14.

> 4. Since the completion of his/her sentence for the offense(s) set out above, the petitioner has not been arrested for any offense that would require registration under Article 27A of Chapter 14.

> 5. The petitioner served this petition on the Office of the District Attorney at least three (3) weeks prior to the hearing held on this matter.

> 6. The petitioner is not a current or potential threat to public safety.

However, the trial court left blank the box indicating that

> [t]he relief requested by the petitioner complies with the provisions of the federal Jacob Wetterling Act, 42 U.S.C. § 14071, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State[,]

leaving a note beside the unchecked box that read "Tier II or Tier III[.]"[1]

The trial court concluded the petition should be denied, and from this order, defendant filed timely written notice of appeal.

## II. Discussion

### A. Standard of review

---

[1] The trial court also left unchecked a box indicating that, "[i]f the petitioner filed a previous petition for termination under N.C. Gen. Stat. § 14-208.12A that was denied, one year or more has passed since the date of the denial." However, as noted above, it had been more than one year since the denial of defendant's next-most-recent petition for termination, and no other information on the record indicates that defendant had had a petition for termination denied within one year of the 2023 petition.

While the determination of whether to terminate a defendant's registration requirement is technically discretionary and subject to review for abuse of that discretion, in cases where, as here, the classification of the offense is the sole issue on appeal, we review the matter de novo as an alleged error of law and not as a discretionary determination by the trial court. *State v. Moir*, 369 N.C. 370, 374, 389 (2016); *In re Hamilton*, 220 N.C. App. 350, 359 (2012).

**B.    Defendant's tier status**

Defendant argues that the underlying offense for which he had to register—sexual activity by a substitute parent—was a Tier I offense for purposes of comparison with federal statutes, specifically in that his offense was not comparable to the allegedly analogous federal Tier II crime. We do not agree.

Under N.C. Gen. Stat. § 14-208.12A, "[t]en years from the date of initial county registration, a person required to register [as a sex offender] may petition the superior court to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article." N.C. Gen. Stat. § 14-208.12A(a) (2023). A trial court may terminate the defendant's registration requirement if the defendant shows the following in the petition:

> (1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,
>
> (2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other

federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State, and

(3) The court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.

N.C. Gen. Stat. § 14-208.12A(a1).

For purposes of N.C. Gen. Stat. § 14-208.12A(a)(2), although the form language on the trial court's order indicates that any termination of defendant's registration requirement must comply with the Jacob Wetterling Act, the current legislation setting minimum standards for the state receipt of federal funds with respect to release from sex offender registries is the Sex Offender Registration and Notification Act (SORNA). *See Moir*, 369 N.C. at 375, 794 S.E.2d at 690 (holding that "the currently effective federal statutory provisions governing the extent to which an individual is required to register as a sex offender is . . . found in the Sex Offender Registration and Notification Act (SORNA)"). Under SORNA, "sex offenders subject to a registration requirement are classified on the basis of three tier levels . . . with sex offenders being treated differently based upon the exact tier to which they are assigned . . . ." *Moir*, 369 N.C. at 376, 794 S.E.2d at 690. The three tiers are statutorily defined by analogy to federal offenses.

First, "[t]he term '[T]ier I sex offender' means a sex offender other than a [T]ier II or [T]ier III sex offender." 34 U.S.C.A. § 20911(2) (2023). Second, "[t]he term '[T]ier

II sex offender' means a sex offender other than a [T]ier III sex offender whose offense

is punishable by imprisonment for more than 1 year" and

> (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
>> (i) sex trafficking (as described in section 1591 of Title 18);
>> (ii) coercion and enticement (as described in section 2422(b) of Title 18);
>> (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of Title 18;
>> (iv) abusive sexual contact (as described in section 2244 of Title 18);
>
> (B) involves--
>> (i) use of a minor in a sexual performance;
>> (ii) solicitation of a minor to practice prostitution; or
>> (iii) production or distribution of child pornography; or
>
> (C) occurs after the offender becomes a [T]ier I sex offender.

34 U.S.C. § 20911(3).

Finally, "[t]he term '[T]ier III sex offender' means a sex offender whose offense

is punishable by imprisonment for more than 1 year" and

> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
>> (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
>
> (B) involves kidnapping of a minor (unless committed by a parent or guardian); or

- 6 -

(C) occurs after the offender becomes a tier II sex offender.

34 U.S.C.A. § 20911(4).

In *State v. Moir*, our Supreme Court observed that "[t]he federal courts have described three approaches for making determinations like ascertaining the tier to which a defendant should be assigned for the purpose of determining whether he is eligible to have his sex offender registration obligation reduced[,]" including, "(1) the 'categorical approach,' (2) the 'circumstance-specific approach,' and (3) 'the modified categorical approach.' " *Moir*, 369 N.C. at 379, 794 S.E.2d at 692. "The applicability of each approach depends upon whether the statute under which a defendant was convicted refers to a 'generic crime' or to a 'defendant's specific conduct.' " *Id.* at 379–80, 794 S.E.2d at 692.

However, "[i]n the event that the court is required to address issues arising under a divisible [state] statute, which exists when the relevant provision sets out multiple offenses rather than a single offense, a pure categorical approach cannot be utilized in any meaningful way." *Id.* at 381, 794 S.E.2d at 693. "In order to resolve cases involving divisible statutes, courts have developed the 'modified categorical approach.' " *Id.* The modified categorical approach "only permits a finding of comparability in the event that the elements of at least one of the alternative offenses set out in the statute defining the offense of which the defendant was previously convicted categorically match the generic federal offense." *Id.*

"In using the 'modified categorical approach,' the court is permitted to examine a limited number of contemporaneously generated documents . . . such as the indictment, the plea agreement, and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* (internal quotation marks and citation omitted). "[T]he only reason that a court is allowed to consider certain extra-statutory information in the 'modified categorical approach' is to assess whether the plea was to the version of the crime' in the state statute 'that correspond[s] to the generic [federal] offense.' " *Id.* at 382, 794 S.E.2d at 693 (internal quotation marks, brackets, and citation omitted).

N.C. Gen. Stat. § 14-27.7(a) provides that

> [i]f a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-27.7(a) (2002).

Here, applying the framework set forth by our Supreme Court in *Moir*, we observe that N.C. Gen. Stat. § 14-27.7(a) is a divisible statute in that it "sets out multiple offenses rather than a single offense[,]" *Id.* at 381, 794 S.E.2d at 693, with the elements being either:

- (1) Defendant assumes the position of a parent in the home of a minor and (2) Defendant engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home; or

- (2) Defendant has custody of a victim of any age or a person who is an agent or employee of any person or institution and (2) Defendant engages in vaginal intercourse or a sexual act with the victim while the victim is in Defendant's custody.

N.C. Gen. Stat. § 14-27.7(a).[2]

Furthermore, when making limited judicial observance of the indictment, *Moir*, 369 N.C. at 381, it appears that both of defendant's counts were of the first formulation, with the indictment specifically referring to intercourse with a victim

---

[2] The current codification of sexual activity by a substitute parent substantially reflects this division, with the offense currently being formulated as follows:

> (a) If a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, the defendant is guilty of a Class E felony.

> (b) If a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony.

> (c) Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-27.31.

residing in his home.[3] Accordingly, our comparison will inquire as to whether the federal statute, abusive sexual contact, is *a categorical* match with the state offense of sexual activity by a substitute parent.

**b. Categorical approach**

This case ultimately turns on, as noted above, whether defendant's "state conviction is comparable to the relevant federal offense for purposes of the 'categorical approach[,]' " that is, whether "the elements composing the statute of conviction are the same as, or narrower than, those of the generic offense." *Moir*, 369 N.C. at 380, 794 S.E.2d at 692 (internal quotation marks and citation omitted).

As the dissent correctly notes, "if a state statute 'sweeps more broadly than the generic crime,' there is no categorical match." *Id.* "In other words, if there is a *realistic probability* that the State would apply its statute [sexual activity by a substitute parent pursuant to N.C. Gen. Stat. § 14-27.2] to conduct that falls outside the generic definition of a crime [abusive sexual contact pursuant to 18 U.S.C. § 2244(a)(3)] there is *no* categorical match . . . ." *Id.* (internal quotation marks, ellipsis, and citation omitted) (emphases added). Therefore, in applying the categorical approach—we consider the elements of the state offense: sexual activity by a substitute parent; with

---

[3] The second count, for which the indictment is absent, is stipulated by the parties to have occurred in a substitute parental, rather than custodial, arrangement.

the elements of the generic federal offense: abusive sexual contact—to determine whether there is a categorical match between the two offenses.

18 U.S.C. § 2244(a)(3) defines abusive sexual contact as

> [w]hoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in or causes sexual contact with or by another person, if so to do would violate- -
>
> . . . .
>
> (3) subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both . . . .

18 U.S.C. § 2244(a)(3) (2023).

In turn, 18 U.S.C. § 2243(a) defines sexual abuse *of a minor*:

> [w]hoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who—
>
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
>
> (2) is at least four years younger than the person so engaging[.]

18 U.S.C.A. § 2243(a).

On the other hand, the offense for which defendant was convicted was sexual activity by a substitute parent under N.C. Gen. Stat. § 14-27.7, which provided:

> [i]f a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable, or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-27.7(a).

Applying the categorical approach to the two offenses at issue in the present case, we observe that the state offense is not *fully* coterminous with the pertinent federal state offense. While the federal prohibition on abusive sexual contact in 18 U.S.C. § 2244(a)(3) includes the requirement that the defendant act "knowingly[,]" N.C. Gen. Stat. § 14-27.7(a) contains no such mens rea requirement.[4] Therefore, the

---

[4] For comparison, the first prong of North Carolina's currently effective statute prohibiting indecent liberties with children includes both a purpose requirement and a mens rea requirement:

> A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he . . . *[w]illfully* takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years *for the purpose of arousing or gratifying sexual desire*[.]

N.C. Gen. Stat. § 14-202.1(a)(1) (emphases added). From this, we can infer that, had our General Assembly intended to include such mens rea requirements in N.C. Gen. Stat. § 14-27.7(a), it could have done so, making their omission intentional.

range of conduct prohibited by N.C. Gen. Stat. § 14-27.7(a) is wider than the range prohibited by 18 U.S.C. § 2244(a)(3), because it does not require a mental state.

I agree with the dissent that "the North Carolina formulation [of the elements of sexual activity by a substitute parent] prescribes no intent requirement, [while] the federal formulation [of the offense] does." However, the dissent argues that a "mismatch between the mens rea of the federal generic crime" and the North Carolina statute "leads inevitably to the conclusion that they are not a categorical match." *See Cabeda v. Attorney General of United States*, 971 F.3d 165, 176 (3d Cir. 2020) (holding that "the mismatch between the mens rea of the federal generic crime and the [state crime] leads inevitably to the conclusion that they are not a categorical match").

In *Cabeda v. Attorney General of United States*, the Third Circuit Court of Appeals acknowledged the oddity of the ensuing result due to the categorical mismatch between the mens rea of the state and federal offenses at issue in that case, observing that:

> one might be forgiven for thinking that, as a matter of common sense, it is scarcely conceivable that one could, as a factual matter, recklessly commit the crime that Pennsylvania calls involuntary deviate sexual intercourse. That improbability, one might further think, should mean that the Pennsylvania statute is a categorical match for the generic crime of sexual abuse of a minor, *because there is no realistic probability* that Pennsylvania could or would enforce its statute in a way that would sweep in reckless conduct. *Following that reasoning would allow for a more sensible result here*, the semantic strictures of the

> categorical approach notwithstanding. Unfortunately, that
> analytical route is also barred by binding precedent.

971 F.3d 165, 175 (3d Cir. 2020) (emphases added).

Ultimately, the Third Circuit observed that the Third Circuit's "precedent, however, takes an alternative approach[,]" and "where the elements of the crime of conviction are not the same as the elements of the generic federal offense[,] the realistic probability inquiry *is simply not meant to apply*." *Id.* at 176 (ellipses omitted) (emphasis added). Again, in reaching this result, the majority acknowledged that, "the mismatch between the mens rea of the federal generic crime and the Pennsylvania involuntary deviate sexual intercourse statute leads inevitably to the conclusion that they are not a categorical match." *Id.* "We are left with no option, then, but to conclude that Cabeda's multiple statutory rapes of a 15-year-old boy do not qualify as sexual abuse of a minor within the meaning of the [federal statute]. *What a world.*" *Id.* (emphasis added).

We propose reaching the "more sensible result[,]" *id.* at 175, lamented by the majority in *Cabeda*, that—despite the mens rea mismatch between the statutes at issue, there is no *realistic probability* that North Carolina could or would enforce its statute in a way that would sweep in *unintentional* sexual activity by a substitute parent—therefore, there *is* a categorical match between the North Carolina offense,

sexual activity by a substitute parent, and the generic federal offense, abusive sexual contact.[5]

Because we conclude there is a categorical match between the two offenses, we conclude that the trial court did not err in denying defendant's petition for termination of his sex offender registration. Consequently, we conclude that the trial court did not abuse its discretion in denying defendant's petition for termination of his sex offender status.

## III.   Conclusion

Because there is not a realistic possibility that the State of North Carolina would apply its statute to conduct that falls outside of the generic definition of the crime, there is a categorical match between the two offenses. Therefore, we conclude that the trial court did not err in denying defendant's petition for termination of his sex offender registration.

AFFIRMED.

Judge GRIFFIN concurs.

Judge MURPHY dissents by separate opinion.

---

[5] I take judicial notice of the reality that the Third Circuit Court of Appeals of the United States has explicitly (but reluctantly) rejected my proffered approach, holding that, "where the elements of the crime of conviction are not the same as the elements of the generic federal offense . . . the realistic probability inquiry . . . is simply not meant to apply." *Cabeda*, 971 F.3d at 176. However, our Supreme Court *has not offered further guidance* on what constitutes a "realistic probability" under *Moir*, and whether that inquiry is an appropriate one to undertake in light of the mens rea mismatch between the two offenses in the present case.

MURPHY, Judge, dissenting.

The Majority's holding, even if framed as the "more sensible result," *Majority* at 14, is an incorrect application of the framework mandated by our Supreme Court in *Moir*, 369 N.C. at 380, as—by the Majority's own admission—"the range of conduct prohibited by [N.C.G.S.] § 14-27.7(a) is *wider* than the range prohibited by 18 U.S.C. § 2244(a)(3), because it does not require a mental state." *Majority* at 12-13 (emphasis added). For the reasons explained below, I would hold that the offense of sexual activity by a substitute parent for which Defendant was convicted includes a broader range of conduct than the allegedly analogous federal offense, such that Defendant was not a Tier II offender, but a Tier I offender, and therefore entitled as a matter of law to a new determination as a Tier I offender.

Under *Moir*, once the modified categorical approach resolves into the categorical approach, we must examine the elements of the divided state offense to see if they refer to a range of conduct narrower than that described by the comparable federal offense for tiering purposes:

> A defendant's state conviction is comparable to the relevant federal offense for purposes of the "categorical approach" when the elements composing the statute of conviction are the same as, or narrower than, those of the generic offense. Accordingly, if a state statute "sweeps more broadly than the generic crime," there is no categorical match. *Descamps* [*v. United States*, 570 U.S. 254, 261 (2013)] (stating that "[t]he key, we emphasize[], is elements, not facts.") In other words, if there is a realistic probability that the State would apply its statute to conduct that falls outside the generic definition of a crime,

there is no categorical match and the prior conviction cannot be for an offense under the federal statute.

*Moir*, 369 N.C. at 380.

Here, the allegedly analogous federal statute is abusive sexual contact under

18 U.S.C. § 2244(a)(3):

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in or causes sexual contact with or by another person, if so to do would violate—
>
> . . . .
>
> (3) subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both[.]

18 U.S.C. § 2244(a)(3) (2023). In turn, 18 U.S.C. § 2244(a)(3) provides that

> [w]hoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in a sexual act with another person who—
>
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
>
> (2) is at least four years younger than the person so engaging[.]

18 U.S.C. § 2243(a) (2023). A "sexual act," under these statutes, is

2

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2) (2023). Overall, then, abusive sexual contact occurs when a person "knowingly engages in or causes" "a sexual act with another person who[] (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging[,]" with "sexual act" being defined in 18 U.S.C. § 2246(2). *See* 18 U.S.C. § 2243(a) (2023).

The offense for which Defendant was convicted was sexual activity by a substitute parent under N.C.G.S. § 14-27.7 (2002). The language of the statute is as follows:

If a defendant who has assumed the position of a parent in the home of a minor victim engages in vaginal intercourse or a sexual act with a victim who is a minor residing in the home, or if a person having custody of a victim of any age or a person who is an agent or employee of any person, or institution, whether such institution is private, charitable,

3

> or governmental, having custody of a victim of any age engages in vaginal intercourse or a sexual act with such victim, the defendant is guilty of a Class E felony. Consent is not a defense to a charge under this section.

N.C.G.S. § 14-27.7(a) (2002).  A "sexual act," for purposes of N.C.G.S. § 14-27.7(a) (2002), "means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse.  Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes."  N.C.G.S. § 14-27.1(4) (2002).

Here, where it is undisputed that Defendant was at least four years older than the victim and the victim was between 12 and 16 at the time of the offense, the question becomes whether, when a defendant assumes the position of a parent in the home of the minor and engages in vaginal intercourse or a sexual act with her, he necessarily *knowingly* engages in or causes a sexual act with the victim.  *See* 18 U.S.C. § 2244(a)(3) (2023); 18 U.S.C. § 2243(a) (2023); *Moir*, 369 N.C. at 384 n.9 (determining that issues of age are resolved by the facts of the offense, not the elements in the statutes); *see also State v. Williams*, 226 N.C. App. 393, 406 (2013) (cleaned up) ("The word 'knowingly' means that defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged.").

For purposes of detailing the comparison, both vaginal intercourse and the N.C.G.S. § 14-27.7(a) (2002) definition of "sexual act" are *almost* completely

subsumed by the federal statute. Vaginal intercourse necessarily includes "contact between the penis and the vulva"; "cunnilingus" entails "contact between . . . the mouth and the vulva"; "fellatio" entails "contact between the mouth and the penis"; "analingus" entails "contact between . . . the mouth and the anus"; and "anal intercourse" entails "contact between . . . the penis and the anus[.]" *Compare* N.C.G.S. § 14-27.1(4) (2002) *with* 18 U.S.C. § 2246(2) (2023). However, "the penetration, however slight, by any object into the genital or anal opening of another person's body" is not *fully* coterminous with "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, *with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person*[.]" *Compare* N.C.G.S. § 14-27.1(4) (2002) *with* 18 U.S.C. § 2246(2)(C) (2023). While the North Carolina formulation prescribes no intent requirement, the federal formulation does. The same could also be said of the offenses more broadly: while the federal prohibition on abusive sexual contact in 18 U.S.C. § 2244(a)(3) includes the requirement that the defendant act "knowingly[,]" the relevant portion of N.C.G.S. § 14-27.7(a) (2002) contains no such mens rea requirement. Therefore, the range of conduct prohibited by N.C.G.S. § 14-27.7(a) (2002) is wider than the range prohibited by 18 U.S.C. § 2244(a)(3).

Based on this mismatched mens rea element, I would hold that Defendant was not a Tier II offender by comparison with abusive sexual contact, as N.C.G.S. § 14-27.7(a) (2002) prohibited a wider range of conduct. Moreover, there is no serious

contention on appeal that Defendant was a Tier III offender; that his offense was comparable to sex trafficking, coercion and enticement, or transportation with intent to engage in criminal sexual activity; that his offense involved a minor in sexual performance, the practice of prostitution, or child pornography; or that his offense occurred after he had already previously become a Tier I offender. *See* 34 U.S.C. §20911(3)(A)(i)-(iii), (B), (C) (2023). This necessarily leads to the conclusion that Defendant was a Tier I offender. *See* 34 U.S.C. § 20911(2) (2023) ("The term 'tier I sex offender' means a sex offender other than a tier II or tier III sex offender."); *see also Cabeda*, 971 F.3d at 176 ("[T]he mismatch between the mens rea of the federal generic crime and the [state crime] leads inevitably to the conclusion that they are not a categorical match . . . ."). Given that the trial court's order denying Defendant's petition for termination of sex offender registration was predicated solely on the belief that Defendant was a Tier II or Tier III offender, this misapprehension of law suffices to show abuse of discretion. *See Miller v. Carolina Coast Emergency Physicians, LLC*, 382 N.C. 91, 104 (2022) (marks omitted) ("[W]hatever the standard of review, an error of law is an abuse of discretion.").

In light of this abuse of discretion, I would vacate the order of the trial court denying Defendant's petition for termination of sex offender registration and remand to the trial court. On remand, Defendant would be entitled to a new determination as a Tier I offender; however, "the ultimate decision of whether to terminate a sex offender's registration requirement still lies in the trial court's discretion." *In re*

*Hamilton*, 220 N.C. App. 350, 359 (2012). "Thus, after making findings of fact supported by competent evidence on each issue raised in the petition, the trial court [would be] then free to employ its discretion in reaching its conclusion of law whether Petitioner is entitled to the relief he requests." *Id.*