IN THE SUPREME COURT OF NORTH CAROLINA

No. 49PA14

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

JAMES KEVIN MOIR

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 231 N.C. App. 628, 753 S.E.2d 195 (2014), vacating an order entered on 18 February 2013 by Judge Richard D. Boner in Superior Court, Catawba County, and remanding this case to the Superior Court, Catawba County, for further proceedings. Heard in the Supreme Court on 16 February 2015.

*Roy Cooper, Attorney General, by William P. Hart, Jr., Assistant Attorney General, for the State-appellant.*

*Crowe & Davis, P.A., by H. Kent Crowe; and LeCroy Law Firm, PLLC, by M. Alan LeCroy, for defendant-appellee. [1]*

ERVIN, Justice.

In this case, we consider whether the Court of Appeals erred by vacating and remanding the trial court's order denying a petition filed by defendant James Kevin Moir seeking termination of the requirement that he register as a sex offender on the

---

[1] H. Kent Crowe filed an appellee's brief on defendant's behalf before unexpectedly dying prior to the holding of oral argument. On 29 January 2015, this Court allowed defendant's motion to substitute M. Alan LeCroy as defendant's counsel.

grounds that the trial court had erroneously determined that defendant was not eligible to have his registration terminated in light of certain provisions of federal law. After careful consideration of the State's challenges to the Court of Appeals' decision, we conclude that the Court of Appeals' decision should be modified and affirmed and that this case should be remanded to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

On 9 January 2001, the Catawba County grand jury returned bills of indictment charging defendant with having committed two counts of first-degree statutory sexual offense and two counts of taking indecent liberties with a child.[2] On 28 November 2001, defendant entered a plea of guilty to two counts of taking indecent liberties with a child. Based upon defendant's guilty plea, Judge James W. Morgan consolidated defendant's convictions for judgment and entered a judgment sentencing defendant to a term of sixteen to twenty months of imprisonment, with that sentence being suspended and with defendant being placed on supervised probation for five years on the condition that defendant serve an active sentence of one hundred ten days imprisonment, pay the costs, comply with the usual terms and conditions of probation and the special terms and conditions of probation applicable to sex offenders, and have no contact with the victim except to the extent that such contact

---

[2] Although the record on appeal only contains a single indictment charging defendant with one count of first-degree statutory sexual offense and one count of taking indecent liberties with a child, the remaining documents contained in the record on appeal and the briefs that the parties submitted to both the Court of Appeals and this Court indicate that defendant was actually charged with two counts of both offenses.

is allowed by the victim's mother. In the course of entering judgment, Judge Morgan ordered defendant to "[i]mmediately register" as a sex offender as required by N.C.G.S. § 14-208.7, a mandate with which defendant complied on 15 March 2002. After defendant received an extension of the probationary period in October 2006 for the purpose of allowing defendant to complete the sex offender treatment program, Judge Timothy S. Kincaid entered an order on 25 June 2007 terminating defendant's probation. On 22 May 2012, defendant filed a petition pursuant to N.C.G.S. § 14-208.12A seeking to have the requirement that he register as a sex offender pursuant to Part 2 of Article 27A of Chapter 14 of the North Carolina General Statutes terminated on the grounds that he had "been subject to the North Carolina registration requirements . . . for at least ten (10) years beginning with the" date of initial registration; that he had "not been convicted of any subsequent offense requiring registration" since the date of his conviction; that he had "not been arrested for any offense that would require registration" since the completion of his sentence; and that proper notice of his request for relief from his sex offender registration requirement had been provided to the appropriate entities.

Defendant's petition came on for hearing before the trial court at the 11 February 2013 criminal session of the Superior Court, Catawba County. On 18 February 2013, the trial court entered an order denying defendant's petition. In its order, the trial court found as fact that:

1.      On November 28, 2001, the defendant entered pleas of guilty to two counts of taking indecent liberties with a minor child as part of a plea agreement.

2.      Prior to the court's sentencing of the defendant, the State gave a statement of facts in support of the plea during which it was stated that the defendant had engaged in improper touching of the defendant's daughter, a child of the age of 4 years, and that he had masturbated in the presence of the child.

3.      The State's statement of facts indicated that the improper touching had occurred in the vaginal area of the child.

4.      The defendant was required to register as a sex offender under Part 2 of Article 27A of Chapter 14 of the General Statutes as a result of his guilty pleas.

5.      The defendant has been subject to the North Carolina registration requirements of Part 2 of Article 27A for at least 10 years beginning with the date of the initial North Carolina registration.

6.      Since the date of conviction, the defendant has not been convicted of any subsequent offenses requiring registration under Article 27A, Chapter 14.

7.      Since the completion of his sentence for the indecent liberties offenses, the defendant has not been arrested for any offense that would require registration under Article 27A, Chapter 14.

8.      The defendant served his petition on the Office of the District Attorney for Catawba County at least three weeks prior to the hearing held in this matter.

9.      The risk of the defendant re-offending is low.

10.     The defendant is not a current or potential threat to public safety.

    11.    Touching of the genital area of a minor with the intent to gratify sexual desire is considered "sexual contact" under the provisions of 18 U.S.C. § 2246(3), and sexual contact is classified as "abusive sexual contact" under 18 U.S.C. § 2244.

    12.    Abusive sexual contact is considered to be a Tier II offense under the provisions of 42 U.S.C. § 16911(3)(A)(iv).

    13.    The registration for Tier II offenses under the provisions of the Jacob Wetterling Act, 42 U.S.C. § 14071, and the provisions of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. § 16911, *et seq.*, is 25 years. This registration period cannot be reduced.

    14.    The defendant has not been registered as a sex offender for at least 25 years.

Based upon these findings of fact, the trial court concluded as a matter of law:

    1.    That the termination of defendant's obligation to register as a sex offender would not comply with the current provisions of the Adam Walsh Child Protection and Safety Act of 2006, which are applicable to the termination of a registration requirement and are required to be met as for the receipt of federal funding by the State of North Carolina.

    2.    [That t]he defendant is not entitled to termination of the registration requirement.

As a result, the trial court determined that defendant's "request to terminate the sex offender registration is denied" and that "defendant shall continue to maintain a current registration under Part 2 of Article 27A of Chapter 14." Defendant noted an appeal to the Court of Appeals from the trial court's order.

On 7 January 2014, the Court of Appeals filed an opinion vacating the trial court's order and remanding this case to the Superior Court, Catawba County, for further proceedings on the grounds that the trial court had erred by determining that defendant was a Tier II sex offender who was ineligible to obtain relief from the sex offender registration requirement. *State v. Moir*, 231 N.C. App. 628, 631-32, 753 S.E.2d 195, 196-97 (2014). According to the Court of Appeals, the trial court reached this erroneous conclusion based upon an incorrect understanding of the relevant provisions of federal law. *Id.* at 631, 753 S.E.2d at 197. In the Court of Appeals' view, the extent to which an individual should be classified as a Tier I, Tier II, or Tier III offender hinges upon the nature of "the offense charged" rather than upon "the facts underlying the case," as the trial court appeared to believe. *Id.* at 631, 753 S.E.2d at 197. As a result, because the crime of taking indecent liberties with a child did not inherently involve the type of conduct required to make defendant a Tier II offender, the Court of Appeals concluded that defendant should be treated as a Tier I, rather than a Tier II, offender. *Id.* at 631-32, 753 S.E.2d at 197 (citing *In re Hamilton*, 220 N.C. App. 350, 358, 725 S.E.2d 393, 399 (2012), and *In re McClain*, 226 N.C. App. 465, 469, 741 S.E.2d 893, 896, *disc. rev. denied*, 366 N.C. 600, 743 S.E.2d 188 (2013)). However, because "the ultimate decision of whether to terminate a sex offender's registration requirement still lies in the trial court's discretion," *id.* at 362, 753 S.E.2d at 197 (quoting *In re Hamilton*, 220 N.C. App. at 359, 725 S.E.2d at 399 (citing N.C.G.S. § 14-208.12A(a1) (2012))), the Court of Appeals vacated the trial court's

order and remanded this case to the trial court for the entry of a new order containing appropriate findings of fact and conclusions of law based upon a correct understanding of the applicable law and, in the event that the trial court determined that defendant was eligible to be relieved from his existing obligation to comply with the sex offender registration program, the making of a discretionary decision concerning the extent to which defendant's petition should be allowed or denied, *id.* at 632, 753 S.E.2d at 197. We granted the State's request for discretionary review on 19 August 2014.

Section 14-208.12A of our General Statutes, which governs requests for relief from the sex offender registration requirement, provides in pertinent part that:

> (a) Ten years from the date of initial county registration, a person required to register under this Part may petition the superior court to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article.
>
> If the reportable conviction is for an offense that occurred in North Carolina, the petition shall be filed in the district where the person was convicted of the offense.
>
> . . . .
>
> (a1) The court may grant the relief if:
>
>> (1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,

(2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State, and

(3) The court is otherwise satisfied that the petitioner is not a current or potential threat to public safety.

N.C.G.S. § 14-208.12A (2015). As a result, given that the trial court's findings of fact, which have not been challenged on appeal, establish that defendant "has not been arrested for any offense that would require registration" since completing his sentence and "is not a current or potential threat to public safety," the extent to which defendant is eligible to be removed from the sex offender registration program depends upon whether "[t]he requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a condition for the receipt of federal funds by the State." *Id.* § 14-208.12A(a1)(2).

The currently effective federal statutory provisions governing the extent to which an individual required to register as a sex offender is entitled to have his or her registration obligation terminated are found in the Sex Offender Registration and Notification Act (SORNA), which is also known as the Adam Walsh Act.[3] Adam

---

[3] The federal statutory provisions governing removal from a state's sex offender registry have been amended on a number of occasions. The relevant provisions were, as N.C.G.S. § 14-208.12A(a1)(2) suggests, originally contained in the Jacob Wetterling Act, 14

Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, Title I, §§ 102, 113, 120 Stat. 590, 593-94.[4] According to SORNA, sex offenders subject to a registration requirement are classified on the basis of three tier levels, *see* 42 U.S.C. § 16911(2)-(4) (2012), with sex offenders being treated differently based upon the exact tier to which they are assigned, *see id.* § 16915. Among other things, 42 U.S.C. § 16915 provides that "[a] sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed) unless the offender is allowed a reduction under" 42 U.S.C. § 16915(b), with "[t]he full registration period" being "15 years, if the offender is a tier I sex offender," "25 years, if the offender is a tier II sex offender," and "the life of the offender, if the offender is a tier III sex offender." *Id.* § 16915(a). However, a Tier I sex offender may have his or her required registration period reduced to ten years, *id.* § 16915(b)(3)(A), and a Tier III offender may have his or her required registration period reduced to twenty-five years, *id.* § 16915(b)(3)(B), in the event that he or she is not "convicted of any offense for which imprisonment for more than 1 year may be imposed," is not "convicted of any sex offense," "successfully complete[s ]any periods

---

U.S.C. § 14071 (1994), which was amended by the "Pam Lychner Sexual Offender Tracking and Identification Act of 1996." *See* Pub. L. No. 104-236, §§ 1-2, 110 Stat. 3093, 3093-96. In 2006, portions of both the Lychner Act and the Wetterling Act were repealed following enactment of the Adam Walsh Child Protection and Safety Act, which currently governs removal from North Carolina's sex offender registry for purposes of N.C.G.S. § 14-208.12A(a1)(2).

[4] SORNA is codified, for the most part, at 42 U.S.C. §§ 16901-16962 (2012).

of supervised release, probation, and parole," and "successfully complete[s] . . . an appropriate sex offender treatment program," *id.* § 16915(b). As a result, defendant would not have been eligible to have his obligation to register as a sex offender terminated at the conclusion of a ten year registration period unless he satisfied the requirements for being a Tier I offender.

The exact contours of the tier system upon which 42 U.S.C. § 16915 depends are spelled out in 42 U.S.C. § 16911. 42 U.S.C. § 16911(1) defines a "sex offender" as "an individual who was convicted of a sex offense." *Id.* § 16911(1). According to 42 U.S.C. § 16911(2), a Tier I sex offender is "a sex offender other than a [T]ier II or [T]ier III sex offender." *Id.* § 16911(2). A Tier II sex offender is

> a sex offender other than a [T]ier III sex offender whose offense is punishable by imprisonment for more than 1 year and—
>
> (A)    is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
>   (i)     sex trafficking (as described in section 1591 of title 18);
>   (ii)    coercion and enticement (as described in section 2422(b) of title 18);
>   (iii)   transportation with intent to engage in criminal sexual activity (as described in section 2423(a)[ ] of title 18[)];
>   (iv)    abusive sexual contact (as described in section 2244 of title 18);
>
> (B)    involves—
>   (i)     use of a minor in a sexual performance;
>   (ii)    solicitation of a minor to practice prostitution; or

(iii) production or distribution of child pornography; or

(C) occurs after the offender becomes a [T]ier I sex offender.

*Id*. § 16911(3).  Finally, a Tier III sex offender  is

a sex offender whose offense is punishable by imprisonment for more than 1 year and—

(A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
(i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of title 18); or
(ii) abusive sexual contact (as described in section 2244 of title 18) against a minor who has not attained the age of 13 years;

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a [T]ier II sex offender.

*Id*. § 16911(4).  As a result of the fact that the State seeks to have defendant categorized as a Tier II offender on the grounds that his "offense" was "comparable to or more severe than" "abusive sexual contact" as defined in 18 U.S.C. § 2244, the extent to which defendant is or is not eligible to have his obligation to register as a sex offender terminated depends upon the extent, if any, to which his convictions for taking indecent liberties with a child in violation of N.C.G.S. § 14-202.1 are

comparable to or more severe than convictions for "abusive sexual contact" in violation of 18 U.S.C. § 2244.[5]

According to N.C.G.S. § 14-202.1,

> (a)     A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
> > (1)     Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
> >
> > (2)     Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C.G.S. § 14-202.1(a) (2015). On the other hand, a defendant is guilty of abusive sexual contact in violation of 18 U.S.C. § 2244 if he or she "knowingly engages in or causes sexual contact with or by another person, if so to do would violate" 18 U.S.C. §§ 2241(a) or (b), 2242, 2243(a) or (b), or 2241(c), or if he or she "knowingly engages in sexual contact with another person without that other person's permission," 18

---

[5] As a result of the fact that the same analysis we have utilized to address the State's contention that defendant should be categorized as a Tier II offender would be appropriate in the event that the State were to contend that defendant should be categorized as a Tier III offender, our discussion of the merits of the contention that the State has actually made in this case suffices to permit an appropriate disposition in this case. We do not, however, wish for the discussion contained in the text of this opinion to be understood as limiting the extent to which the Superior Court, Catawba County, is entitled to classify defendant as a Tier I, a Tier II, or a Tier III offender on remand.

U.S.C. § 2244(a)-(b) (2012), with "sexual contact" for purposes of 18 U.S.C. § 2244 defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," *id.* § 2246(3).[6] The extent to which the crime of taking indecent liberties with a child is comparable to or more severe than the crime of abusive sexual contact for purposes of 42 U.S.C. § 16911(3)(A)(iv) is, of course, a question of federal, rather than state, law.

The federal courts have described three approaches for making determinations like ascertaining the tier to which a defendant should be assigned for the purpose of

---

[6] A careful examination of 18 U.S.C. §§ 2241(a), 2241(b), 2242, 2243(a), 2243(b), and 2241(c) reveals that guilt of the offenses delineated in each of these statutory provisions requires proof that the offender "engage[d] in or cause[d] sexual contact with or by another person," 18 U.S.C. § 2244, in such a manner as to result in the commission of a "sexual act," which is defined as "contact between the penis and the vulva or the penis and the anus," with "contact involving the penis occur[ring] upon penetration, however slight;" "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;" "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person;" or "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," *id.* § 2246(2)(A)-(D). However, given that the offense set out in 18 U.S.C. § 2244(b) does not require proof that the offender committed a "sexual act" and given that conviction for an offense "comparable to or more severe" than that defined in 18 U.S.C. § 2244(b) would suffice to render the person in question a Tier II offender even if that offense was not also "comparable to or more severe than" the offenses delineated in 18 U.S.C. § 2244(a), *see* 42 U.S.C. § 16911(3)(A)(iv), we need not address the extent, if any, to which defendant's conviction for taking indecent liberties with a child would be "comparable to or more severe than" a conviction for the offenses requiring proof of the commission of a "sexual act" delineated in 18 U.S.C. § 2244(a).

determining whether he is eligible to have his sex offender registration obligation reduced pursuant to 42 U.S.C. § 16915(b): (1) the "categorical approach," (2) the "circumstance-specific approach," and (3) the "modified categorical approach."[7] *United States v. White*, 782 F.3d 1118, 1130 (10th Cir. 2015) (stating that "courts employ two main approaches, . . . the categorical approach and the circumstance-specific approach"); *see Descamps v. United States*, ___ U.S. ___, ___, ___, 186 L. Ed. 2d 438, 449, 451-53 (2013) (explaining that the "modified categorical approach" is solely a "variant" of the "categorical approach"); *see also United States v. Berry*, 814 F.3d 192, 195-96 (4th Cir. 2016); *United States v. Price*, 777 F.3d 700, 704-05 (4th Cir.), *cert. denied*, ___ U.S. ___, 192 L. Ed. 2d 941 (2015). The applicability of each approach depends upon whether the statute under which a defendant was convicted refers to a "generic crime" or to a "defendant's specific conduct." *White*, 782 F.3d at 1130. In the event that Congress intended for the relevant statutory provision to refer to a generic crime rather than a defendant's specific conduct, the "categorical approach," in which courts compare the elements of the offense for which the defendant was convicted with the "elements of the generic offense identified in the federal statute," is used in making the necessary comparison. *Price*, 777 F.3d at 704; *see White*, 782 F.3d at 1130-31; *see also Taylor v. United States*, 495 U.S. 575, 602, 109 L. Ed. 2d 607, 629 (1990). A defendant's state conviction is comparable to the

---

[7] The "circumstance-specific approach" is also known as the "non-categorical approach." *See United States v. Price*, 777 F.3d 700, 705 (4th Cir.), *cert. denied*, ___ U.S. ___, 192 L. Ed. 2d 941 (2015).

relevant federal offense for purposes of the "categorical approach" when the elements composing the statute of conviction "are the same as, or narrower than, those of the generic offense." *Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 449; *Price*, 777 F.3d at 704 (citing *Taylor*, 495 U.S. at 602, 109 L. Ed. 2d at 629). Accordingly, if a state statute "sweeps more broadly than the generic crime," there is no categorical match. *Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 451 (stating that "[t]he key, we emphasize[ ], is elements, not facts.") In other words, if there is " 'a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of a crime,' there is no categorical match and the prior conviction cannot be for an offense under the federal statute." *Price*, 777 F.3d at 704 (quoting *Gonzales v. Duenas–Alvarez,* 549 U.S. 183, 193, 166 L. Ed. 2d 683, 692-93 (2007)).

On the other hand, in the event that Congress intended to refer to a defendant's specific conduct instead of to the elements of the offense involved in the underlying criminal conviction, courts apply the "circumstance-specific approach." *Id.* at 705 (citing *Nijhawan v. Holder,* 557 U.S. 29, 34, 174 L. Ed. 2d 22, 27 (2009)). In applying the "circumstance-specific approach," the court is required to compare the actual conduct that led to the defendant's conviction for the relevant state offense with the elements of the offenses as defined in federal law. *Id.*; *see Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 456. In other words, when the facts underlying the defendant's prior conviction would support a conviction under the federal statute, the defendant's prior offense is comparable to the federal offense for categorization purposes. *Price*, 777

F.3d at 705 (citing *Nijhawan*, 557 U.S. at 34, 174 L. Ed. 2d at 27); *see Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 456. Thus, the "broader framework" made possible through the use of the "circumstance-specific approach" is available "when the federal statute refers 'to the specific way in which an offender committed the crime on a specific occasion,' rather than to the generic crime." *Price*, 777 F.3d at 705 (quoting *Nijhawan*, 557 U.S. at 34, 174 L. Ed. 2d at 27).

In the event that the court is required to address issues arising under a divisible statute, which exists when the relevant provision sets out multiple offenses rather than a single offense, a pure categorical approach cannot be utilized in any meaningful way. *See Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 449 (noting that the "modified categorical approach" applies "when a prior conviction is for violating a so-called 'divisible statute' "). In order to resolve cases involving divisible statutes, courts have developed the "modified categorical approach." Under that approach, "[g]eneral divisibility, however, is not enough" to permit a finding of comparability. *United States v. Montes–Flores*, 736 F.3d 357, 365 (4th Cir. 2013) (quoting *United States v. Cabrera–Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013)). Instead, the "modified categorical approach" only permits a finding of comparability in the event that the elements of at least one of the alternative offenses set out in the statute defining the offense of which the defendant was previously convicted categorically match the generic federal offense. *Descamps,* ___ U.S. at ___, 186 L. Ed. 2d at 453 (stating that "[a]ll the modified [categorical] approach adds is a mechanism for

making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes' " on the theory that, "[i]f at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of" having committed) (ellipsis in original) (quoting *Nijhawan,* 557 U.S. at 41, 174 L. Ed. 2d at 32).[8]  In using the "modified categorical approach," the court is permitted to examine a limited number of contemporaneously generated documents described in *Shepard v. United States,* 544 U.S. 13, 26, 161 L. Ed. 2d 205, 214 (2005), "such as the indictment, the plea agreement, and jury instructions, to 'determine which alternative formed the basis of the defendant's prior conviction.' "  *Berry*, 814 F.3d at 196 (quoting *Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 449).  "The modified [categorical] approach does not authorize a . . . court to substitute such a facts-based inquiry for an elements-based one." *Descamps,* ___ U.S. at ___, 186 L. Ed. 2d at 462.  Instead, the only reason that a court is allowed to consider certain extra-statutory information in the "modified categorical approach" is "to assess whether the plea was to the version of the crime" in the state statute that "correspond[s] to the generic offense." *Id.* at ___, 186 L. Ed.

---

[8] The greater flexibility allowed through the use of the "modified categorical approach" is not available in the event that the relevant state statute specifies several alternative *means* of committing a crime, one of which would bring the statute of conviction within the definition of the generic crime, instead of setting out alternative offenses made up of differing *elements*. *Mathis v. United States*, 579 U.S. ___, ___, 195 L. Ed. 2d 604, 616-18 (2016); *see also id.* at ___, 195 L. Ed. 2d at 610 (defining "elements" as "the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction' " (quoting *Black's Law Dictionary* 634 (10th ed. 2014)) and defining "facts" as "mere real-world things—extraneous to the crime's legal requirements" that "need neither be found by a jury nor admitted by a defendant" (citing *Black's Law Dictionary* 709)).

2d at 452 (citing *Shepard*, 544 U.S. at 25-26, 161 L. Ed. 2d at 217 (plurality opinion)). If none of the alternative offenses set out in a "divisible" statute is determined to be comparable to the generic offense on the basis of a "categorical" analysis, no "match[ ]" exists and "[t]he modified [categorical] approach . . . has no role to play" in the analysis. *Id.* at___, 186 L. Ed. 2d at 453-54; *accord Montes–Flores*, 736 F.3d at 365 (stating that "[g]eneral divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, [the generic offense]" (quoting *Cabrera–Umanzor*, 728 F.3d at 352)). Thus, "[o]nce the elements of the offense of conviction have been identified, the examination of any *Shepard* documents ends, and the court proceeds with employing the categorical approach, comparing the elements of the offense of conviction with the elements of the offense identified in the federal statute." *Berry*, 814 F.3d at 196 (citing *Descamps*, ___ U.S. at ___, 186 L. Ed. 2d at 449). As a result, we must now determine whether 42 U.S.C. § 16911, when properly construed, requires use of the "categorical approach," the "circumstance-specific approach," or the "modified-categorical approach."

Although the United States Supreme Court has pointed out that the word "offense" in statutes can refer to either a generic offense or specific conduct, *Nijhawan*, 557 U.S. at 34-35, 174 L. Ed. 2d at 27-28, an analysis of the language in which 42 U.S.C. § 16911(3)(A)(iv) is couched and various equitable and practical

considerations persuade us that Congress intended for the required comparability analysis to focus on a generic offense rather than the defendant's individual conduct. As an initial matter, when taken in context, the references to "offense" contained throughout 42 U.S.C. § 16911 tend, for the most part, to refer to specific criminal offenses as defined in state law rather than to the specific conduct in which the defendant engaged. For example, as the Court of Appeals noted, the fact that a "sex offender" is defined as "an individual who was convicted of a sex offense," 42 U.S.C. § 16911(1), the fact that a Tier II offender is defined as a "sex offender whose offense is punishable by imprisonment for more than 1 year," *Moir,* 231 N.C. App. at 630, 753 S.E.2d at 196 (quoting 42 U.S.C. § 16911(3) (2006)), and the fact that the statute contains "lists of elements of the offense" tend to suggest that Congress was referring to the identity of the generic offense for which a defendant was convicted rather than to a description of each individual defendant's conduct, *id.* at 631, 753 S.E.2d at 197. In addition, we note that 42 U.S.C. § 16911(3)(A) refers to offenses described in 18 U.S.C. §§ 1591, 2422(b), 2423(a), and 2244. 42 U.S.C. § 16911(3)(A); *White*, 782 F.3d at 1133 (citing 42 U.S.C. § 16911(3)(A)). As the United States Supreme Court has stated, cross-references to other federal statutory provisions tend to suggest that Congress intended to refer to a generic offense instead of the specific conduct in which the defendant engaged. *Nijhawan*, 557 U.S. at 36-38, 174 L. Ed. 2d at 28-30 (explaining that the references in the Armed Career Criminal Act to specific federal crimes support use of the "categorical approach"); *cf. United States v. Dodge*, 597 F.3d

1347, 1353-56 (11th Cir.) (en banc) (explaining that a "circumstance-specific approach" is appropriate as applied to the phrase "against a minor" as found in 42 U.S.C. § 16911(5)(A)(ii) and (7)(I) given that these phrases do not include a cross-reference to another federal penal section), *cert. denied*, 562 U.S. 961, 178 L. Ed. 2d 287 (2010)). Thus, our reading of the relevant statutory language tends to suggest that Congress intended to refer to a generic offense rather than to the defendant's underlying conduct in the relevant portion of 42 U.S.C. § 16911.

In addition, in making this determination, we must consider

> the practical difficulties and potential unfairness of applying a circumstance-specific approach, including the burden on the trial courts of sifting through records from prior cases, the impact of unresolved evidentiary issues, and the potential inequity of imposing consequences based on unproven factual allegations where the defendant has pleaded guilty to a lesser offense.

*White,* 782 F.3d at 1132 (citing *Taylor*, 495 U.S. at 601-02, 109 L. Ed. 2d at 628-29). In conducting that inquiry, we note that a trial judge required to make the necessary categorization determination long after the date of a defendant's conviction may lack access to relevant factual information concerning the defendant's conduct, particularly in cases involving convictions resulting from a guilty plea rather than a jury verdict. *See Descamps,* ___ U.S. at ___, 186 L. Ed. 2d at 457 (noting that the use of the "circumstance-specific approach" would require trial courts "to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial, facts that, although unnecessary

to the crime of conviction, satisfy an element of the relevant generic offense"; that "[t]he meaning of those documents will often be uncertain"; and that "the statements of fact in them may be downright wrong"). In addition, use of the "circumstance-specific approach" would, in some instances, force trial courts to base their decisions on "unresolved evidentiary issues" and "unproven factual allegations," *White*, 782 F.3d at 1132, 1135 (citing *Taylor*, 495 U.S. at 600-02, 109 L. Ed. 2d at 628-29), and result in what amounts to a mini-trial concerning the exact nature of a defendant's earlier conduct in which the defendant might be unable to effectively defend himself or herself due to the passage of time and other factors. Thus, the interpretation of the literal statutory language that we believe to be appropriate has the added benefit of avoiding a number of practical and equitable problems that would arise from reliance upon the "circumstance-specific approach" for the purpose of determining whether defendant is a Tier I or a Tier II offender.

The reading of the relevant portion of 42 U.S.C. § 16911 that we believe to be appropriate is also consistent with the approach adopted by various federal courts and agencies in the course of resolving this issue. For example, the Fourth Circuit stated in *Berry* that "SORNA's text . . . suggests that the categorical approach should be used to determine whether a prior conviction is comparable to or more severe than the generic crimes listed in Section 16911(4)(A)." 814 F.3d at 197. The Tenth Circuit has reached the same conclusion. *White*, 782 F.3d at 1135 (concluding that "Congress intended courts to apply a categorical approach to sex offender tier classifications

designated by reference to a specific criminal statute"). In fact, no federal circuit, to our knowledge, has construed the exact statutory provision at issue here differently than we do. Finally, the National Guidelines for Sex Offender Registration and Notification promulgated by the United States Department of Justice provide that, "in assessing whether the offense satisfies the criteria for tier II or tier III classification, jurisdictions generally may premise the determination on the elements of the offense, and are not required to look to underlying conduct that is not reflected in the offense of conviction." The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38053 (July 2, 2008). As a result, for all of these reasons, we conclude that, in determining whether defendant's convictions for taking indecent liberties with a child suffice to make him a Tier II offender as defined in 42 U.S.C. § 16911(3)(A)(iv), we are required to utilize the categorical approach, as supplemented by the "modified categorical approach" in the event that defendant was convicted of violating a divisible statute.[9]

---

[9] A number of courts that utilize the "categorical approach" for other purposes have adopted the "circumstance-specific" method for the purpose of applying the statutory reference to the commission of a crime "against a minor" contained in 42 U.S.C. § 16911(3). *See generally Berry*, 814 F.3d at 197 (stating that "the language of Section 16911(3)(A), like the language of Section 16911(4)(A), instructs courts to apply the categorical approach when comparing prior convictions with the generic offenses listed except when it comes to the specific circumstance of the victims' ages" (citations omitted)); *Gonzalez–Medina*, 757 F.3d at 429 (concluding "that Congress contemplated a non-categorical approach to the age-differential determination in the § 16911(5)(C) exception"); *Dodge*, 597 F.3d at 1356 ("hold[ing] that courts may employ a noncategorical approach to examine the underlying facts of a defendant's offense, to determine whether a defendant has committed a 'specified offense against a minor' and is thus a 'sex offender' subject to SORNA's registration requirement"); *United States v. Mi Kyung Byun*, 539 F.3d 982, 990-94 (9th Cir.) (determining that the phrase "a specified offense against a minor" contained in 42 U.S.C. § 16911(5)(A)(ii) and (7) allows

As we have already noted, N.C.G.S. § 14-202.1 prohibits "[w]illfully tak[ing] or attempt[ing] to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire," *id.* § 14-202.1(a)(1), and "[w]illfully commit[ting] or attempt[ing] to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years," *id.* § 14-202.1(a)(2). As of the present date, this Court has not had the opportunity to determine whether N.C.G.S. § 14-202.1(a) is or is not a divisible statute, particularly in the aftermath of the amendment to that statutory provision worked by Chapter 779 of the 1975 North Carolina Session Laws, which removed the requirement that the defendant act "with intent to commit an unnatural sexual act," N.C.G.S. § 14-202.1 (1969), from the crime of taking indecent liberties with children, and amended the remaining statutory language so as to create the two subdivisions, N.C.G.S. § 14-202.1(a)(1) and (a)(2), that have been contained in all versions of N.C.G.S. § 14-202.1(a) since the 1 October 1975 effective date of the amendment. Act of June 24, 1975, ch. 779, 1975 N.C. Sess. Laws 1105. Thus, given our willingness to authorize the use of the "modified categorical approach" in appropriate cases, a determination of whether N.C.G.S. § 14-

---

for a "circumstance-specific approach"), *cert. denied*, 555 U.S. 1088, 172 L. Ed. 2d 761 (2008). We agree with the approach to age-related issues deemed appropriate in the cases and hold that North Carolina courts should use the non-categorical or "circumstance-specific approach" in addressing any age-related issues that may arise in the course of determining whether an individual seeking the termination of an existing sex offender registration requirement should be categorized as a Tier I, a Tier II, or a Tier III offender.

202.1(a) is a divisible statute must be made in order to properly determine whether defendant is eligible to seek relief from the existing requirement that he register as a sex offender.

An analysis of the literal language of N.C.G.S. § 14-202.1(a) provides a basis for arguing that N.C.G.S. § 14-202.1 is a divisible statute, with N.C.G.S. § 14-202.1(a)(1) and N.C.G.S. § 14-202.1(a)(2) being understood to state separate offenses. The Tenth Circuit read N.C.G.S. § 14-202.1(a) in just that manner. *White*, 782 F.3d at 1136. However, there is a reasonable and rational basis for taking the opposite position as well. For example, the Court of Appeals rejected a defendant's fatal variance claim even though the trial court instructed the jury concerning the issue of defendant's guilt of taking indecent liberties with a child by using the language "for the purpose of arousing or gratifying sexual desire" as found in N.C.G.S. § 14-202.1(a)(1) when the indictment was couched solely in terms of the "lewd and lascivious act" language contained in N.C.G.S. § 14-202.1(a)(2). *State v. Wilson*, 87 N.C. App. 399, 400-01, 361 S.E.2d 105, 106-07 (1987), *disc. rev. denied*, 321 N.C. 479, 364 S.E.2d 670 (1988). In addition, this Court and the Court of Appeals have upheld indecent liberties convictions under both subdivisions of N.C.G.S. § 14-202.1(a) based upon essentially identical conduct. *See, e.g., State v. Banks*, 322 N.C. 753, 767, 370 S.E.2d 398, 407 (1988) (concluding that the act of inserting an adult's tongue into a child's mouth constituted an "immoral, improper, or indecent" act within the meaning of N.C.G.S. § 14-202.1(a)(1) and a "lewd or lascivious" act within the meaning of

N.C.G.S. § 14-202.1(a)(2)); *State v. Hammett*, 182 N.C. App. 316, 323, 642 S.E.2d 454, 459 (concluding that masturbating in a child's presence constituted an offense punishable pursuant to N.C.G.S. 14-202.1(a)(2)), *appeal dismissed and disc. rev. denied*, 361 N.C. 572, 651 S.E.2d 227 (2007); *State v. Turman*, 52 N.C. App. 376, 377, 278 S.E.2d 574, 575 (1981) (concluding that masturbating in a child's presence constituted an offense pursuant to N.C.G.S. § 14-202.1(a)(1)); *cf. State v. Jones*, 172 N.C. App. 308, 314-16, 616 S.E.2d 15, 19-20 (2005) (holding that a single act cannot support two convictions under both N.C.G.S. § 14-202.1(a)(1) and N.C.G.S. § 14-202.1(a)(2), respectively). In light of these decisions, at least four members of an en banc panel of the Fourth Circuit have determined that N.C.G.S. § 14-202.1(a) is not a divisible statute. *United States v. Vann*, 660 F.3d 771, 782-83 (4th Cir. 2011) (King, J., concurring, with Motz, Gregory, & Davis, JJ.). Thus, the extent to which N.C.G.S. § 14-202.1(a) is a divisible statute remains an open question about which reasonable minds can differ.

Assuming, without in any way deciding, that N.C.G.S. § 14-202.1(a) is a divisible statute, additional questions of North Carolina law must be resolved before defendant's eligibility to seek the termination of his obligation to continue to register as a sex offender can be determined. Although this Court has held that proof that a touching occurred is not necessary for a finding of guilt for purposes of N.C.G.S. § 14-202.1(a)(1), *see State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (stating that N.C.G.S. § 14-202.1(a)(1) does not require "the State [to] prove that a touching

occurred"), and while the Court of Appeals has held that proof of a touching is not necessary for a finding of guilt under N.C.G.S. § 14-202.1(a)(2), *see Hammett*, 182 N.C. App. at 323, 642 S.E.2d at 459 (holding that the defendant did not need to have physically touched the victim in order to be convicted of taking indecent liberties with a child in violation of N.C.G.S. § 14-202.1(a)(2)); *State v. Every*, 157 N.C. App. 200, 207, 578 S.E.2d 642, 648 (2003) (stating that "[i]t is not necessary that an actual touching of the victim by defendant occur in order for the defendant to be 'with' a child for purposes of taking indecent liberties under [N.C.G.S.] § 14-202.1(a)(1)" (citation omitted)), this Court has never addressed, much less decided, whether a physical touching of the victim is necessary for a defendant to be convicted of taking indecent liberties with a child in violation of N.C.G.S. § 14-202.1(a)(2). For that reason, this Court has also never determined whether any such physical touching requirement applicable to N.C.G.S. § 14-202.1(a)(2) is limited to an "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person." 18 U.S.C. § 2246(3). As a result, our existing precedent simply does not permit the making of certain preliminary determinations required for a showing that defendant's conviction for taking indecent liberties with a child is "comparable to or more severe than" "abusive sexual contact," *Berry*, 814 F.3d at 200 (quoting 42 U.S.C. 42 U.S.C. § 16911(4)(A)), or, alternatively, whether there is "a realistic probability . . . that the State would apply [N.C.G.S. § 14-202.1(a)(2)] to conduct that falls outside the generic definition of" abusive sexual

contact, *Price*, 777 F.3d at 704 (quoting *Duenas–Alvarez*, 549 U.S. at 193, 166 L. Ed. 2d at 693).

Even if N.C.G.S. § 14-202.1(a)(2) is interpreted in such a manner as to make it comparable to abusive sexual contact in violation of 18 U.S.C. § 2244, the present record does not permit us to determine, using the limited range of documents delineated in *Shepard*, whether defendant was convicted of the offense spelled out in N.C.G.S. § 14-202.1(a)(2) rather than the offense spelled out in N.C.G.S. § 14-202.1(a)(1). As an initial matter, we note that the indictments returned against defendant for the purpose of charging him with taking indecent liberties with a child allege, in conjunction with a citation to N.C.G.S. § 14-202.1, that:

> the defendant named above unlawfully, willfully, and feloniously did take and attempt to take immoral, improper, and indecent liberties with the child named below for the purpose of arousing and gratifying sexual desire and did commit and attempt to commit a lewd and lascivious act upon the body of the child named below. At the time of this offense, the child named below was under the age of 16 years and the defendant named above was over 16 years of age and at least five years older than the child.

Similarly, the transcript of plea indicates that defendant had agreed to plead guilty to "two counts of indecent liberties"; the Felony Judgment Findings of Aggravating and Mitigating Factors describe defendant's "offense" as "indecent liberties student"; and the trial court's judgment indicates that defendant had been convicted of "indecent liberties with a child," with an accompanying statutory reference to

N.C.G.S. § 14-202.4(A).[10]  As a result, the materials contained in the present record

that the trial court is authorized to consider pursuant to *Shepard* simply do not

permit a determination that defendant was convicted of committing the offense made

punishable by N.C.G.S. § 14-202.1(a)(2) to the exclusion of the offense made

punishable by N.C.G.S. § 14-202.1(a)(1) or to a generic offense made punishable by

N.C.G.S. § 14-202.1.[11]  *See Vann*, 660 F.3d at 773-76 (per curiam) (holding that an

indictment like that returned against defendant in this case did not suffice to permit

---

[10] Although the State filed a motion seeking to have the statutory reference contained in the judgment changed from N.C.G.S. § 14-202.4(A) to N.C.G.S. § 14-202.1, the record contains no indication that this amendment request was ever approved.

[11] As we noted earlier, the trial court did find that, "[p]rior to the court's sentencing of the defendant, the State gave a statement of facts in support of the plea during which it was stated that the defendant had engaged in improper touching of the defendant's daughter, a child of the age of 4 years, and that he had masturbated in the presence of the child," with this "improper touching [having] occurred in the vaginal area of the child."  Although defendant did not challenge the sufficiency of the evidence to support this finding on appeal, the exact basis for this finding and the extent to which the trial court was entitled to consider the information upon which this finding was based pursuant to *Shepard* is unclear given that we have not been provided with a transcript of the hearing held before the trial court for the purpose of considering defendant's request for the termination of his obligation to register as a sex offender.  However, the State did indicate in its brief before this Court that, "[t]hough no transcript from the formal plea proceedings was introduced as an exhibit, the State's description of its stated factual basis was not disputed by [defendant]" and was "corroborated by the testimony from [defendant's] witness."  As a result, the trial court's finding concerning the conduct underlying defendant's conviction for taking indecent liberties with a child appears to rest, at most, upon a subsequent reconstruction of a factual basis statement offered in support of defendant's guilty plea rather than any sort of contemporaneously generated document of the type contemplated by *Shepard*.  We need not determine whether the trial court was entitled to consider this information at this point given the disposition that we have deemed appropriate in this case and leave the determination of whether the information upon which the trial court relied in its initial order could be considered in determining defendant's eligibility to have his sex offender registration obligation terminated consistent with *Shepard* for consideration on remand.

a court to determine, for purposes of the "modified categorical approach," that the defendant was convicted of the offense made punishable by N.C.G.S. § 14-202.1(a)(2)).

Although this Court has the authority to make a number of the determinations listed above without the necessity for further proceedings in the trial court, we believe, after careful consideration, that we should refrain from doing so at this point. As the record clearly reflects, neither the Court of Appeals nor the trial court considered the extent, if any, to which the necessary categorization decision could be made using the "modified categorical approach." For that reason, we have not had the benefit of briefing and argument concerning the numerous legal questions of first impression which must be resolved in order to determine defendant's eligibility for removal from the sex offender registry. In light of its misapprehension of the applicable law, which was entirely understandable given that many of the decisions upon which we have relied in this opinion had not been handed down by the date upon which it entered its order, the trial court failed to determine whether N.C.G.S. § 14-202.1(a) constitutes a divisible statute, whether a conviction for the offense made punishable by N.C.G.S. § 14-202.1(a)(2) requires proof that the defendant "intentional[ly] touch[ed], either directly or through the clothing, . . . the [victim's] genitalia, anus, groin, breast, inner thigh, or buttocks," 18 U.S.C. § 2246(3), and the extent, if any, to which the information that could be appropriately considered under *Shepard* that was contained in the record tended to show that defendant's indecent liberties conviction rested solely upon a violation of N.C.G.S. § 14-202.1(a)(2).

Consistent with the well-established legal principle that "[f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light," *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E.2d 1, 8 (1973) (brackets in original) (quoting *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939), and citing *Davis v. Davis*, 269 N.C. 120, 127, 152 S.E.2d 306, 312 (1967); *Owens v. Voncannon*, 251 N.C. 351, 355, 111 S.E.2d 700, 703 (1959); and *In re Gibbons*, 247 N.C. 273, 283, 101 S.E.2d 16, 23-24 (1957)), we believe that the most appropriate manner in which to resolve the issues that remain to be addressed in this case is for this Court to affirm the Court of Appeals' decision that the trial court erred by applying the "circumstance-specific approach" in determining whether defendant should be deemed eligible to have the requirement that he register as a sex offender terminated. However, we modify the Court of Appeals' decision in order to require use of the "modified categorical approach" rather than the pure "categorical approach" in cases involving divisible statutes, and remand this case to the Superior Court, Catawba County, for further proceedings not inconsistent with this opinion. On remand, the trial court should consider whether N.C.G.S. § 14-202.1 is a divisible statute. If the trial court deems N.C.G.S. § 14-202.1 to be divisible, it must then consider whether guilt of any separate offense set out in N.C.G.S. § 14-202.1(a)(2) requires proof of a physical touching and whether any such physical touching requirement necessitates proof that the defendant "intentional[ly] touch[ed], either directly or through the clothing, [ ] the genitalia, anus, groin, breast,

inner thigh, or buttocks of" the victim.  Finally, if guilt of any separate offense set out in N.C.G.S. § 14-202.1(a)(2) requires proof that defendant "intentional[ly] touch[ed], either directly or through the clothing, [ ] the genitalia, anus, groin, breast, inner thigh, or buttocks of" the victim, the trial court must determine whether any document that the trial court is authorized to consider under *Shepard* permits a determination that defendant was convicted of violating N.C.G.S. § 14-202.1(a)(2) rather than any specific offense set out in N.C.G.S. § 14-202.1(a)(1) or any generic offense made punishable pursuant to N.C.G.S. § 14-202.1(a).  Finally, if necessary, the trial court should consider, in the exercise of its discretion, whether it should terminate defendant's obligation to register as a sex offender.

MODIFIED AND AFFIRMED, AND REMANDED.